IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ED LOYHA,

        Plaintiff,                      No. CIV S-05-1758 CMK

        vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.                 ORDER

_____/

        Plaintiff, Ms. Ed Loyha, brings this action pursuant to 42 U.S.C. § 405(g) and Local Rule 72-302 seeking judicial review of and a judgement reversing the final administrative decision of defendant Commissioner of Social Security finding that her disability had ceased in December 2003 and that she was no longer entitled to Supplemental Security Income (SSI). The parties have filed cross motions for summary judgment. As both parties have consented to magistrate jurisdiction, the motions are before the undersigned for decision.

I. Background

        Plaintiff grew up in Loas and immigrated to the United States in approximately 1992. (Tr. 129.) In 1993, an ALJ determined that plaintiff's personality disorder met listing 12.08 of 20 C.F.R., Part 404, Subpt P., App. 1 (the Listings) and that she was, therefore, entitled

to SSI. (Tr. 175-177.) On December 12, 2003, the Social Security Administration determined that plaintiff's disability had ceased and that she was able to work. (Tr. 183-186.) On April 20, 2004, a Social Security Hearing Officer Affirmed the December 12, 2003 cessation of benefits decision. (Tr. 355-366; 189-191.) Plaintiff requested review of that decision by an Administrative Law Judge (ALJ). (Tr. 192-193.) On March 8, 2005, a hearing was held before ALJ, Antonio Acevedo-Torres. (Tr. 394-407; 14-20.) Plaintiff was represented by an attorney at the hearing. (Tr. 394-407.) On April 19, 2005, the ALJ issued a decision, which made the following findings.

The ALJ found that, at the time of the hearing, plaintiff was forty-six years old, did not attend school and had no work experience. (Tr. 19.) He found that she did not engage in substantial gainful activity after December 31, 2003. (Tr. 19.) The ALJ determined that the medical evidence established that plaintiff had joint and abdominal pain, a depressive disorder, but that she did not have an impairment or combination of impairments listed in or medically equivalent to one listed in The Listings. (Tr. 19.)

The ALJ found that the claimant's subjective complaints were not consistent with the evidence of record and not fully credible. (Tr. 19.) He concluded that, since December 2003, plaintiff had experienced medical improvement related to her ability to work. (Tr. 19.) Specifically, the ALJ concluded that plaintiff had the residual functional capacity to perform light work; therefore, she was not disabled at any time on or after December 2003. (Tr. 19.)

The decision of the ALJ became final when the Appeals Council denied plaintiff's request for a review on June 28, 2005. (Tr. 6-8.) The plaintiff filed a timely appeal in this court on September 1, 2005.

II. Standard of Review

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. See Copeland v. Bowen, 861 F.2d 536, 538

(9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III.   Discussion

In her motion for summary judgment, plaintiff argues that the ALJ erred in finding medical improvement in plaintiff's ability to work. Specifically, plaintiff asserts the ALJ (1) failed to determine whether her medical improvement was related to her ability to work; (2) the ALJ failed to credit plaintiff's testimony regarding her pain, depression, and functional limitations; and (3) the ALJ erred in applying the Grid because plaintiff had credible evidence of non-exertional impairments.

A.   Medical Improvement

Plaintiff states that the ALJ failed to accurately assess the medical evidence concerning plaintiff's ability to engage in work related activities. In order to terminate benefits, the Commissioner must come forward with evidence that the claimant's condition has improved. See Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983). The Commissioner must compare a

claimant's current medical condition with her condition at the time of the most recent favorable decision, the comparison point.  See 20 C.F.R. 416.994 (b)(1).   The Commissioner must determine whether there has been any medical improvement in a claimant's condition, and, if so, whether the medical improvement is related to the claimant's ability to work.  See 20 C.F.R. § 416.994.  A claimant's medical improvement is not related to her ability to do work if there has been a decrease in the severity of the impairment, but no increase in a claimant's functional ability to do basic work activities.  See id.

Here, plaintiff was found to be disabled due to a personality disorder that met listing 12.08 in December 1993.  Accordingly, her comparison point is December 13, 1993, the date that the Commissioner determined that she was disabled.  The medical evidence prior to the comparison point date was as follows.  In 1991 and 1992, psychiatrist Ted Kobashigawa, M.D, treated plaintiff.  (Tr. 133-138.)  He opined that plaintiff might have moderate difficulties with personal, social, and occupational adjustments.  (Tr. 138.)  Specifically, Dr. Kobashigawa noted that, when plaintiff demanded Tylenol and did not get it, she returned to his office and destroyed it; breaking windows.  (Tr. 134.)  The police intervened, and plaintiff was charged with felony assault.  (Tr. 133.)  Plaintiff and her family continued to threaten Dr. Kobashigawa.  (Tr. 133.)

Carl E. Drake, Sr. M.D. performed a psychiatric consultation at the Commissioner's request.  (Tr. 123-127.)  Dr. Drake noted that plaintiff resisted giving any specific information with respect to her specific illness.  (Tr. 123.)  He noted that plaintiff seemingly had some lower abdominal pain associated with surgery performed in 1988 and complained of back pain and two menstrual periods a month.  (Tr. 124.)  Plaintiff claimed to have lost forty pounds as a result of her surgery.  (Tr. 124.)  Dr. Drake observed that plaintiff was poorly nourished and answered questions poorly, including the time of the day and the week.  (Tr. 125.)  Plaintiff said she did not know anything about American holidays although she had been in the Untied States for ten years.  (Tr. 126.)

///

Dr. Blake noted that plaintiff appeared to be generally inactive, not participating in family life, aloof, seclusive, and withdrawn. (Tr. 126.) He noted that plaintiff had never made any effort to find employment in the United States. He opined that she was a totally helpless individual who could not handle her own finances and did not appear able to adapt to a new culture. (Tr. 127.)

The medical evidence after the comparison point of December 13, 2003 is as follows. At the Commissioner's request, Michael Joyce, M.D. performed a psychological evaluation of plaintiff on November 10, 2003. (Tr. 295-298.) Dr. Joyce noted that plaintiff was on time for her appointment, to which she was driven by her daughter. (Tr. 295.) The examination was facilitated by an interpreter because plaintiff understood only "a mild degree" of English. (Tr. 295.) Plaintiff described pain problems since abdominal surgery in 1988, lower back pain, bilateral knee pain, dizziness, weakness, and pain in her left arm. (Tr. 295.) She described problems sleeping due to these problems. (Tr. 295.) She described her mood as depressed, "no enjoyment." (Tr. 295.) Plaintiff was taking Prozac, Lorazepam, Nifedipine, Celebrex and Cimetidine. (Tr. 296.)

Dr. Joyce observed that plaintiff was neatly dressed and clean. (Tr. 297.) He opined that her reliability and cooperation seemed generally adequate and observed that her mood was moderately dysphoric, but that her affect is fully reactive. (Tr. 297.) He noted that she was oriented to person, month, day, year, city, and state. (Tr. 297.) Plaintiff required one trial to learn three new words, and her two minute recall of the words was one of three (but three of three with clues). (Tr. 297.) Plaintiff was unable to perform any mathematical calculations. (Tr. 297.) Plaintiff was not tested for abstractions for "cross cultural reasons." (Tr. 298.)

Dr. Joyce opined that plaintiff did not have the math or language skills to manage her own finances. (Tr. 298.) However, he concluded that she could follow simple and complex instructions and maintained her attention throughout the twenty-two minute interview. (Tr. 298.) He opined that "today, she is able to interact with others appropriately, ask simple questions,

request assistance when needed, and adhere to socially appropriate behavior that does not distract others." (Tr. 299.) Dr. Joyce concluded that plaintiff "appear[ed] generally capable of responding appropriately to supervision, coworkers, or the usual work situations, including changes in a routine setting. (Tr. 299.)

At the request of plaintiff's attorney, Michelina Regazzi, Ph.D, performed a psychological evaluation of plaintiff in February 2005. (Tr. 386-389.) Dr. Regazzi noted that her evaluation of plaintiff was limited due to plaintiff's limited ability to understand English. (Tr. 386.) Plaintiff reported that she suffered from insomnia, headaches, and dizziness. She stated that she sometimes gets mad and starts yelling. (Tr. 386.) Plaintiff related that she had abdominal surgery, but was unable to state what the surgery was for. (Tr. 386.) Plaintiff reported taking medications, but was unable to list the medications. (Tr. 386.) Plaintiff stated that she had no friends and mostly stayed home and slept or cleaned up a bit. (Tr. 387.) Plaintiff sometimes goes walking alone or goes to the store with her daughter, with whom she lives. (Tr. 387.)

Dr. Regazzi noted that plaintiff was on time for her appointment and dressed appropriately. (Tr. 387.) She observed that plaintiff's motor activity was passive, that her mood was cooperative and that she was slow to respond, but that may have been due to the language barrier. (387-388.) During testing, plaintiff thought that the month was January; she was unable to state the year, day of the week, or the city. (Tr. 388.) She identified the country as Sacramento. (Tr. 388.) She was unable to do basic counting. (Tr. 388.) No further assessment was conducted due to the language barrier and the cultural differences between plaintiff's native Laos and the United States. (Tr. 388.)

Dr. Regazzi opined that plaintiff was capable of understanding and carrying out simple instructions. She found plaintiff capable of performing most basic daily living activities such as self-care, daily living tasks, and driving. (Tr. 388.) Dr. Regazzi found that plaintiff was below average mental status and that she was very socially withdrawn. (Tr. 388.) Dr. Regazzi

6

concluded that plaintiff would be impaired in her ability to interact effectively with peers and supervisors. (Tr. 388.) She opined that plaintiff would be unreliable to the basic demands of most work environments such as attendance and safety factors due to plaintiff's complaints of daily severe headaches, dizziness, and insomnia. (Tr. 389.)

In his decision, the ALJ found that:

> ...since the most favorable decision in 1993, the record reflects medical improvement related to the claimant's ability to perform work. The record shows that the 1993 allowance decision was based on the claimant's mental impairment, which met the severity depicted in 12.08 of the Listing of Impairments. However, since that date, the record shows substantial improvement in the claimant's mental status.... In fact the record does not show that plaintiff is undergoing any type of mental heath treatment for her complaints.

(Tr. 15.) The ALJ based his decision on plaintiff's consultative psychiatric examination by Dr. Joyce in November 2003. The ALJ noted that plaintiff did not allege any serious psychiatric problems, admitted that she was independent in her activities of daily living, and understood some English. (Tr. 15.) Specifically, the ALJ noted that Dr. Joyce noted that the "claimant's ability to perform the mental demands of work is intact." (Tr. 15.)

The ALJ rejected the opinion of Dr. Regazzi that plaintiff's ability to perform the mental demands of work was severely limited. (Tr. 15-16.) He specifically rejected Dr. Regazzi's opinion because the record did not contain any objective findings to support Dr. Regazzi's opinion. (Tr. 16.) He stated that Dr. Regazzi's assessment was speculative and was primarily based on plaintiff's report of her limitations, as well as cultural differences. (Tr. 16.) He found that Dr. Regazzi's opinion was not supported by the opinion of any examiner on record, and was contradictory to the Commissioner's November 2003 evaluation by Dr. Joyce. (Tr. 16.) The ALJ, therefore, rejected this "extreme unsupported opinion." (Tr. 16.)

The court recognizes that, as noted by the ALJ in his decision, Dr. Regazzi's opinion was solicited by plaintiff's attorney. When a doctor's opinion is solicited by claimant's counsel, that fact may be used in conjunction with other evidence in the record to question the doctor's credibility and disregard that opinion. See Saelee v. Chater, 94 F.3d 520, 523 (9th Cir.

1996).  The court finds that in this case there is not substantial other evidence in the record to support the ALJ's rejection of Dr. Regazzi's opinion.  First, the court notes that, although Dr. Regazzi's ultimate conclusion differed from that of Dr. Joyce, her opinion did not contradict Dr. Joyce's November 2003 evaluation.  Both Dr. Joyce and Dr. Regazzi noted that plaintiff was on time for her appointment, appropriately dressed, and cooperative. (Tr. 297, 387.)   More importantly, both examiners noted that plaintiff's mood was dysphoric. (Tr. 297, 388.)  Both examiners observed plaintiff's difficulty with mathematical calculations and concluded that she was incapable of managing her own finances. (Tr. 298, 389.)

Additionally, Dr. Regazzi's assessment of plaintiff is supported by other evidence in the record.  Specifically, it is supported by the assessment of Dr. Drake, which was conducted at the Agency's request in 1993.   Dr. Drake observed that plaintiff could not tell him what day it was, and believed that the year was 1990, when it was 1993. (Tr. 125.)  Dr. Regazzi observed that plaintiff could not tell her the correct month (plaintiff stated it was January when the month was February) and did not know the correct day or year. (Tr. 388.)  In short, Dr. Drake's and Dr. Regazzi's examinations of plaintiff were very similar.  Plaintiff was cooperative with both examiners, but unable to respond well to simple questions concerning the day and year, among other things.

The court finds that the ALJ's specific reasons for rejecting Dr. Regazzi's opinion are not supported by substantial evidence in the record.  Therefore, it cannot be said that the most recent evidence of record indicates improvement in plaintiff's mental condition. The court will remand this matter back for further consideration of Dr. Regazzi's opinion and for further consideration of whether there has been any improvement in plaintiff's mental condition and whether that improvement relates to her ability to perform work.

///

///

///

Plaintiff also asserts that the ALJ erred by rejecting her allegations regarding joint and abdominal pain. The ALJ rejected plaintiff's allegations of physical pain because "the record does not show any specialized course of treatment for her complaints." (Tr. 16.) The court again finds that the ALJ's conclusion is not supported by substantial evidence in the record. The record reflects that plaintiff was admitted to the hospital on August 19, 1999 to August 21, 1999 and treated for progressive abdominal pain and luekocytosis. (Tr. 278-283.) Plaintiff was treated in the emergency room in December 2003 for irregular vaginal bleeding resulting in having two periods a month, pain, and clotting. (Tr. 300.) Plaintiff's primary care physician from January 2000 to January 2004 examined her on seventeen separate occasions. His clinical notes reflect that he diagnosed and treated her for chronic headaches and sinusitis, vaginal discharge, low back pain, duodenal ulcer, low abdominal pain, and leg cramps. (Tr. 367-385.)

The substantial evidence in the record, specifically plaintiff's seventeen visits to her primary care physician for complaints about and treatment of chronic headaches sinusitis, belies the ALJ's finding that "the record does not show that plaintiff is undergoing any regular, specialized course of treatment for her complaints." (Tr. 16.) The ALJ's findings regarding plaintiff's physical limitations are not supported by substantial evidence in the record. Accordingly, the court will remand this matter for further consideration of plaintiff's allegedly disabling physical symptoms of joint and abdominal pain, headaches, and dizziness.

B.  Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly credit her testimony regarding her pain, depression, and functional limitations. "Without affirmative evidence that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds a claimant's testimony relating to the intensity of her pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is

credible and what testimony undermines the claimant's complaints." See Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999) (citations and internal quotations omitted).

The ALJ gave the following reasons for discrediting plaintiff's testimony of mental and physical limitations.

> ...despite the claimant's allegation of disabling symptoms such as joint and abdominal pain, fatigue, headaches, and fever, and a vegetative existence, the record does not show that the claimant is receiving any regular, ongoing specialized treatment for her complaints. The record also reflects that examinations have not revealed any significant findings, or reflected any neurological involvement, or muscle wasting or atrophy, usually associated with pain and inactivity. Clearly one would assume that if the claimant's report of her imitations [sic] were credible, then after 10 years of inactivity, there would some [sic] evidence of atrophy of the arms or legs.

(Tr. 17.)

The ALJ's reasons for discrediting plaintiff's subjective complaints of mental and physical limitation are therefore: (1) minimal medical findings; (2) lack of regular ongoing treatment; and (3) lack of muscle wasting or atrophy. The ALJ also noted that plaintiff had been "inconsistent with her report of daily living activities." With the exception of a cursory reference to plaintiff's lack of specialized treatment and an inconsistency in a report of daily living activities, the ALJ failed to discuss any of the established credibility factors set forth in Social Security Ruling 96-7p.

Although the ALJ stated that plaintiff had "admitted in November 2003 that she was independent in her daily living activities," a review of the record shows that the consultative examiner made a brief notation during on his November 2003 notes that plaintiff was "independent in her activities of daily living." (Tr. 297.) The notation did not describe what plaintiff's daily activities were. However, in contrast, other consultative examiners noted plaintiff's reports of her daily activities. Plaintiff reported during her 2005 evaluation that she "stayed home all day, did not cook , and sometimes accompanied her daughter to the grocery store." (Tr. 387.) She reported in a 2003 evaluation that she did no cooking; picked up her own clothes, but otherwise did no housework; had no hobbies; and slept most of the day. (Tr. 290.)

1  Plaintiff testified at her administrative hearing that she had problems walking and sitting and that
2  she laid down most of the day. (Tr. 402, 403.)
3      In contrast to the ALJ's finding that plaintiff had not received any specialized
4  treatment for her complaints, the record reflects that plaintiff was prescribed psychotropic
5  medication, including Prozac. (Tr. 290-291.) Finally, mental examinations performed by both
6  Dr. Dr. Drake and Dr. Regazzi indicated that, although plaintiff was cooperative, she was unable
7  to tell each examiner what day or year it was and unable to perform any simple math problems.
8  (Tr. 125, 388.) Both examiners concluded that plaintiff exhibited compromised social
9  functioning, which would impair her ability to work.
10     The court therefore concludes that the ALJ's reasons for discrediting plaintiff's
11  testimony are neither clear nor convincing. The court will remand this matter for consideration
12  of the established credibility factors set forth in Social Security Ruling 96-7p.
13     C.     Improper Reliance on the Grid
14     Plaintiff's final argument of error is that the ALJ should not have relied on the
15  Grid because it did not accurately describe plaintiff's limitations. See Moore v. Apfel, 216 F.3d
16  864, 869 (9th Cir. 2000) ("When the grids do not completely describe the claimant's abilities and
17  limitations...the grids are inapplicable and the ALJ must take the testimony of a VE [vocational
18  expert].") All of plaintiff's challenges to the ALJ using the Grid are based on her assertion that
19  Dr. Regazzi's findings should have been given weight in determining plaintiff's limitations.
20  Accordingly, the court will not address this argument here as this matter is being remanded for
21  further consideration of Dr. Regazzi's findings. However, the court notes, that should the ALJ
22  credit Dr. Regazzi's findings, reliance on the Grid may be misplaced.
23  ///
24  ///
25  ///
26  ///

Case 2:05-cv-01758-CMK   Document 29   Filed 05/31/07   Page 12 of 12

IV.  Conclusion

In accordance with the above it is ordered that:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's motion for summary judgment is denied.

3. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED:  May 30, 2007.

*Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

12